## FIRST STATE BANK OF MANNSVILLE v. HOWELL ' *et al.*

No. 2823.   Opinion Filed August 6, 1913.

Rehearing Denied December 23, 1913.

(137 Pac. 657.)

1.   **PLEADING—Judgment on Pleadings—Effect of General Denial.** A motion for judgment on the pleadings was properly overruled, in an action 'in replevin, where the answer contained several defenses in addition to a general denial.   The general denial raised an issue of fact, and did not render the pleading inconsistent, no matter what the other defenses may have been.

2.   **SAME.**   Ordinarily a motion for judgment on the pleadings is proper where the answer admits, or leaves wholly undenied, the allegations of the petition; but in replevin a general denial puts in issue every fact pleaded, and in such case a motion for judgment on the pleadings should be overruled.

3.   **DAMAGES—Breach of Contract—Damages Recoverable.** Loss of profits, or damage to a crop, if within the contemplation of the parties at the time a contract is made, and was such a loss or damage as flowed directly or proximately from the breach of such contract, and is capable of accurate measurement or estimate, is recoverable in an action for damages for the breach of such contract.

4.   **CHATTEL MORTGAGES—Assignee of Mortgage—Equities Between Parties.**   In an action in replevin by the assignee of a nonnegotiable note and a chattel mortgage against the mortgagor to foreclose the chattel mortgage, it is competent to prove failure of consideration and damages caused by the fault of the original payee; such evidence is permissible only to defeat the assignee's right of possession, and not for the purpose of recovering damages from him.

5.   **REPLEVIN—Measure of Damages—Wrongful Detention.**   The measure of damages for the wrongful detention of a team of work mules is the usable value thereof during the time they were wrongfully detained.

(Syllabus by Robertson, C.)

*Error from County Court, Marshall County;*
*J. W. Falkner, Judge.*

Action in replevin by the First State Bank of Mannsville against J. L. Howell and others to recover possession of a team

of mules for the purpose of foreclosing a chattel mortgage thereon. Judgment for defendants, and plaintiff brings error. Affirmed.

*E. D. Slough,* for plaintiff in error.

*Chas. A. Coakley, F. E. Kennamer, E. S. Hurt,* and *Geo. S. March,* for defendants in error.

Opinion by ROBERTSON, C. On December 15, 1908, one J. B. Wall, a merchant, sold to J. L. Howell two mules for $275, said sum to be paid October 1, 1909. On the same day the said J. L. Howell executed and delivered to the said J. B. Wall two promissory notes, secured by chattel mortgage on the said mules and other property, one in the sum of $275, the other in the sum of $219.93, which said notes were also signed by Chas. Lewis, as surety. Wall, the merchant, was indebted to plaintiff in error in the sum of $2,400 in the month of December, 1908, and shortly after the execution of the notes by Howell, as above set out, he indorsed and delivered to the said plaintiff in error said notes as collateral security for the payment of his indebtedness to the bank. In January thereafter Wall was adjudged a bankrupt. It may be fairly inferred, and is in fact alleged by the plaintiff in error, that the mules were charged on the books of Wall, the merchant, in the sum of $275, together with merchandise and credit given for the notes, and that at the time the last item was furnished by Wall to Howell the latter was entitled to a credit of $49.50; or, in other words, Howell had items charged on Wall's books sufficient to cover both notes, less the sum of $49.50. At the time of the trial Wall and his bookkeeper, J. D. Tanner, were deceased. The defendant Howell answered plaintiff's petition by general denial, and, in addition, admitted the execution of the notes and mortgage, but denied that plaintiff was the owner, and entitled to maintain the action. He also alleged that the price of the mules was $200 only, and that the excess, to wit, $75, as shown by the note, was usurious interest; that by the wrongful taking of the property by plaintiff he was damaged in the sum of $250, and that by breach of warranty as to the age of the mules he was damaged in the sum of $80. He also alleged that he had a contract with Wall to furnish supplies for the year

1909, and that by reason of Wall's failure to furnish such supplies he was damaged by having to work away from home, and out of his crop, for two months, at $1 a day, when his team at work in the crop would have been worth $3 a day, and, further, that he was prevented from planting his crop in time by reason of such failure to furnish supplies, and that therefore his crop was late, and was damaged by drouth in the sum of $250. Plaintiff demurred generally to the answer, and especially to paragraphs 4 and 7; the first being with reference to usurious interest, and the latter with reference to damages occasioned by the failure to furnish supplies. The court sustained the demurrer to paragraph 7, but later sustained a motion to set aside the demurrer, and permitted said paragraph to stand. Plaintiff filed a motion for judgment on the pleadings, which was overruled. The cause was tried to a jury February 7, 1911, and a verdict was returned in favor of the defendant for the return of the mules or their value in the sum of $100 each, and for $100 damages for the wrongful detention of the same. Motion for a new trial was filed, considered, and overruled, and judgment was entered on the verdict, and plaintiff brings this appeal to reverse said judgment, and assigns as error: (1) The court erred in not rendering judgment for the plaintiff on the pleadings. (2) The court erred in setting aside the order sustaining a demurrer to paragraph 7 of defendants' answer. (3) The court erred in overruling motion of plaintiff for a new trial.

Judgment on the pleadings is a permissible practice in the courts of this jurisdiction when the state of the pleadings warrants such disposition of the case. The case in hand being one in replevin, the gist of the action is the wrongful detention of the property. Defendants answered by general denial, and, in addition, pleaded affirmative defenses. In the latter they admit the execution and delivery of the notes and mortgage, default in payment of which is made the basis of plaintiff's claim to the right of possession. At any event it was incumbent on plaintiff, before it could recover, to establish its right of possession. Even though the special defenses set up in the answer should fail, yet the defendants, under the general denial, had a right to defeat

plaintiff's claim by showing right of possession in some third party.  Hence such an answer, containing different defenses, is not an inconsistent pleading in replevin, and, where an issue of fact is raised, as it was in this case, by the general denial, it is not error for the trial court to overrule a motion for judgment on the pleadings.  Ordinarily a motion for judgment on the pleadings is proper where the answer admits, or leaves wholly undenied, the material allegations of the petition; but in this case no such condition exists.  It might in some cases be proper to award judgment on the pleadings where the answer does not deny all the facts alleged, but denies legal conclusions only; but we are again, in this case, met with the principle that a general denial in replevin puts in issue every fact pleaded in the petition.  11 Ency. P. & P. 1031.  This being true, there was no error in the action of the trial court in overruling the motion for judgment on the pleadings as interposed by plaintiff.  *Thomas v. Ray*, 48 Colo. 423, 110 Pac. 77.

It is next contended that the court erred in refusing to sustain plaintiff's demurrer to the seventh paragraph of defendants' answer.  This paragraph in substance charged that at the time defendant executed the notes and mortgage in controversy the said Wall agreed to furnish Howell such supplies, out of his store, as would enable him to make a crop during the year 1909; that he failed and refused to do so, and, on account of such failure, Howell was compelled to work out for $1 per day, when he should have been in his crop, and that the services of himself and team in his crop during such time was worth $3 per day; that, on account of the fact that his team and other personal property was mortgaged to Wall, he was prevented from obtaining credit elsewhere, all of which was known to Wall at the time the notes and mortgage were executed; that, as a direct and proximate result of such failure and refusal on Wall's part to comply with the terms of his said agreement, and furnish Howell the supplies necessary to enable him to plant and care for his crop, he was compelled to and did neglect planting it for two months; and the same was damaged and his profits thereon reduced thereby in the sum of $250.  The notes were nonnegotiable, and any

defense Howell may have had as against Wall would be available to him as against plaintiff. No reply was filed by the bank to the affirmative matter set up in the answer, nor was there any motion to strike the same; but a demurrer was interposed, which at first was sustained, but later overruled, by the court, at the request of defendants, over the objection of plaintiff. The jury, by its general verdict, found that such an agreement as set up by paragraph 7 of the answer was the consideration for the execution of the notes secured by the chattel mortgage involved in this action, and by said verdict found for defendants on every material fact necessary to sustain his theory under the issues formed by the pleadings. This, therefore, brings us to the question, Is the damage to a crop such as charged and proved in this case such a one as would be recoverable in an action for the breach of the contract between Howell and Wall? Or, in other words, is the loss of prospective profits on a crop under the facts charged and proved a proper element of damage for breach of the contract set up in the answer and found to exist by the verdict of the jury? If this element (loss of profits or damage to crop) was within the contemplation of the parties at the time the contract was made, and was such a damage as flowed directly and proximately from the breach of the contract, and was capable of accurate measurement or estimate, then the verdict must stand; otherwise it must be set aside.

We find this proposition to have been carefully considered and this question decided by Harrison, C., in *Ft. S. & W. R. Co. v. Williams,* 30 Okla. 726, 121 Pac. 275, 40 L. R. A. (N. S.) 494, wherein it is said:

"It is well settled in this state that damages based upon prospective profits which would have been realized had the contract been performed may be allowed, providing they are fairly within the contemplation of the parties, are the direct natural consequence of the breach of the contract, and are susceptible of being ascertained with reasonable certainty."

In *Bell v. Reynolds,* 78 Ala. 511, 56 Am. Rep. 52, the chief point in controversy was one relating to the proper measure of damages claimed by defendant by way of set-off to plaintiff's action. Plaintiff sued to recover the value of certain fertilizer

sold and delivered to defendant. The defense set up was that plaintiff agreed to sell and deliver defendant 20 tons, at a stipulated price, with notice of its intended use. Plaintiff failed to deliver the full amount purchased, and defendant, not being able to obtain it elswhere, failed to make as good crop on the land he had intended to use it on as on that which was fertilized. The land upon which the fertilizer was designed to be used was prepared and cultivatei in a farmerlike manner. Upon a portion of it was used the fertilizer furnished under the contract, and this portion produced between 300 and 400 pounds of seed cotton to the acre more than that adjoining, which was also planted in cotton; the quantity and cultivation of each being the same. It was contended that the amount of defendant's damage for the failure of plaintiff to deliver the balance of the fertilizer is measured by the profits which he lost in the depreciated production of cotton on the land upon which he intended to use it. The court held that the rule or true measure of damages was in fact the difference in value between the cotton raised on the land on which the fertilizer was used and that raised on the adjoining land, of the same quality and cultivated in the same manner, on which no fertilizer had been used.

As a general rule in ordinary cases the true measure of damages, where the seller fails to deliver goods sold where the purchase price has not been paid, is the difference between the agreed price and the market price at the time and place of delivery, with interest, and this is on the theory that the purchaser can go on the market and purchase the goods from another by paying the difference in price. But, when this cannot be done, the rule does not apply. Such is the condition in the case at bar. And it is also true that ordinarily profits are not included in the injury for which compensation is made, and yet again it is frequently held that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained. *Griffin v. Colver,* 16 N. Y. 489, 69 Am. Dec. 718.

In *Bell v. Reynolds,* 78 Ala. 514, 56 Am. Rep. 55, the rule is stated as follows:

"The true rule seems to be that profits which have been sustained as the natural consequence of the breach or wrongful act complained of are recoverable, unless they are objectionable either on the ground of remoteness or of uncertainty. Those profits are usually considered too remote, among many others, which are not the immediate fruits of the principal contract, but are dependent on collateral engagements and enterprises, not brought to the notice of the contracting parties, and not, therefore, brought within their contemplation, or that of the law."

Our own statute seems to contemplate such a rule, as may be seen by reference to section 2852, Rev. Laws 1910, where it is provided that:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all detriment proximately caused thereby, or which, *in the ordinary course of things, would be likely to result therefrom.* No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin." (Italics ours.)

As was said hereinbefore, the notes and mortgage are but evidences of the principal contract alleged to have been made and entered into by Wall and Howell. This alleged contract is not denied by the bank by reply or otherwise. The jury found, as it had a right to find, that the contract was made as charged. Therefore we are bound to say that the parties, at the time they made the contract, had in mind the profits that would arise from the making of a crop; that was, and of necessity must have been, in contemplation of the parties at the time the mortgage was executed, for the mortgage covered all the crops to be grown by Howell as well as the mules in question. This being true, we have no hesitancy in saying that the rule fixing the measure of damages heretofore announced is not only supported by reason and authority, but by the statute above quoted. See, also, in support of this rule, *Jones v. George,* 61 Tex. 345, 48 Am. Rep. 280; *Rice v. Whitmore,* 74 Cal. 619, 16 Pac. 503, 5 Am. St. Rep. 479; Joyce on Damages, sec. 1374.

However, this evidence in support of this element of damage in the case at bar was competent only for the purpose of show-

ing that the notes and mortgage had been satisfied, or that the consideration therefor had failed, and could not, on that account, be made to support a verdict for damages against the bank in this action in replevin. The only purpose in admitting such evidence was to show that the consideration for the notes had failed; hence no damage could be recovered from the bank by reason of Wall's failure to furnish the supplies in accordance with the terms of the contract, and for this reason, and this alone, it was not error for the court to permit paragraph 7 of the answer to stand, and to allow the introduction of evidence in support of the plea of failure of consideration in the notes, and thereby defeat the right of recovery in the replevin action. Of the correctness of the foregoing position, we do not think there can be any question. It is undisputed that there was such a contract made as alleged in Howell's answer; that its terms were broken by Wall; that Howell was damaged as alleged in his answer; the testimony was amply sufficient to sustain the verdict, which warrants us in finding that Howell's story is true, wherein he says that he could not get supplies from Wall; that, in order to support his family, he had to work away from home by the day, when his services, with the team, were required in his own crop, and were worth at least $3 per day; that thereby his crop was planted late, and was caught by the drouth; that he had 25 acres of corn that made only five bushels per acre, while his neighbors, with the same labor on the same quality of land, made 25 bushels per acre, which was worth 50 cents per bushel. On this basis he showed a damage of $250 on testimony wholly undisputed. Thus his damage was ascertainable by the plainest, easiest, and most accurate measure possible, by showing the loss of property occasioned by the damage done the crop. Making a crop was one of the principal thoughts the parties had in mind when the contract was made. It was for that purpose he made the contract; had he wanted to work out by the day, there would have been no necessity for the contract and mortgage. But, if he made a crop, he must needs make provision for the sustenance of his family and team while doing so, and, when he made the contract with Wall (the principal contract between them, evidenced par-

tially by the notes and mortgage), it was in the contemplation of their minds that no crop could be made unless the supplies were furnished, and that to fail to furnish the supplies at the time they were needed could result only in damage to Howell, and therefore the allegation and proof to support the same were properly presented to the jury in order to make defendants' legitimate defense.

It is not sufficient objection to this conclusion to say that the damages sought to be recovered upon profits to be made on crops renders them too remote or speculative. As a matter of fact such damages, as has been pointed out in *Ft. S. & W. Ry. Co. v. Williams, supra,* are easily and accurately ascertainable, because they are not only within the contemplation of the parties at the time the contract was made, but are the direct and natural consequences of the breach of the contract, and are susceptible of being ascertained with reasonable certainty.

The court, in the case last above cited, in speaking of the manner of computing damages such as arise in this case, says:

"There is more or less inaccuracy in every action for damages for breach of contract; but, in order to justify a recovery in any case, assuming that a breach has been committed, there are two necessary elements to be considered: One that a damage has been done; the other that such damage is the result of the breach. The amount of the one should be computed with reasonable accuracy. The fact of the other must be determined with reasonable certainty. A less degree of accuracy is required in the former than of certainty in the latter; but neither is required to be absolute or beyond conjectural possibilities. Where it reasonably appears that a party has been damaged, and that such damage is the direct result of the breach, then a recovery is justified. The next step is to ascertain how much will reasonably compensate the injured party. This should be computed by the plainest, easiest, and most accurate measure which will do justice in the premises, and if, from the conditions in the contract, and the nature of the breach, it reasonably appears that the extent or amount of damages may be more readily, easily, correctly, and justly ascertained by applying the loss of profits as a measure, if it is evident that profits were lost, and the amount thereof can be calculated with reasonable accuracy, then such profits are the true measure to be applied."

Hence, from the foregoing, follows necessarily the conclusion that paragraph 7 of defendants' answer stated good grounds of defense, and the court committed no error in refusing to set aside his order reinstating the same, or in refusing to sustain a demurrer thereto.

It is urged under the next assignment of error that the verdict is contrary to law, for that the evidence is insufficient to disprove that plaintiff was the owner and holder of the notes at the time of the commencement of the action, and to prove warranty as to the age and other qualities of the mules at the time of the sale; but these were both questions of fact for the jury, and inasmuch as they were both submitted as such, under instructions which were not objectionable to the plaintiff, and which fairly state the law applicable thereto, we are not at liberty to interfere with the finding of the jury on a simple question of fact, if there is any evidence in the record reasonably tending to support the same, and in this case there is evidence sufficient under the foregoing rule to sustain the verdict, and these specifications of error must therefore fail.

It is also charged that the court erred in giving instruction No. 10, fixing the measure of damages. This instruction, standing alone, would be an erroneous statement of the law, but, taken in connection with instruction No. 11, immediately following, it states the law applicable to the facts of this case, and is therefore not open to the criticism lodged against it. The court properly instructed the jury that the damages to which plaintiff would be entitled, if any, as against the bank, were the usable value of the mules during the time they were wrongfully detained. There is evidence in the record to show that the usable value of the team from the time it was taken in October, 1909, up to date of trial on February, 1911, nearly sixteen months, was $1 per day. This is in no wise disputed or contradicted. The jury gave only $100 damages; under the evidence a verdict for three times that amount would stand.

We can see no error in the record justifying interference by this court, and the judgment should therefore be affirmed.

By the Court: It is so ordered.