# W. H. COYLE CONSOL. COS. v. SWIFT & CO.

No. 3720.    Opinion Filed June 23, 1914.

Rehearing Denied July 28, 1914.

(141 Pac. 1114.)

1. **SALES—Breach of Contract—Liability of Seller.** A party to a contract of sale who knowingly and studiously fails and refuses to deliver the commodity agreed to be sold, as stipulated in the contract, is liable to the other party in damages in an amount sufficient to cover the loss, if any, resulting from such failure to deliver.

2. **SAME—Measure of Damages.** The damages resulting from the breach of a contract of sale of a commercial commodity may be properly estimated by taking the difference between the contract price and the price that must be paid for the purchase of a like quantity and quality of the same commodity in the open market at the time of delivery specified in the contract.

(Syllabus by Galbraith, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by Swift & Co. against the W. H. Coyle Consolidated Companies for breach of contract. Judgment was for the plaintiff, and defendant brings error. Affirmed.

*C. G. Horner,* for plaintiff in error.

*Tibbetts & Green* and *Zevely, Givens & Stoutz,* for defendant in error.

Opinion by GALBRAITH, C.  Swift & Co. sued the W. H. Coyle Consolidated Companies for damages alleged to have been sustained for the breach of a contract for the purchase and sale of cotton seed oil.  It is charged in the petition that on the 27th day of September, 1909, Swift & Co. entered into a contract in writing with the W. H. Coyle Consolidated Companies for the purchase of "three tanks prime crude cotton seed oil at the price of forty cents per gallon of seven and one-half pounds, loose, f. o. b. buyer's tank cars, Guthrie, Oklahoma, for shipment during the month of October, 1909, capacity of one of the tanks to be about one hundred sixty barrels"; that these tank cars were furnished at Guthrie, Okla., one on the 28th day of October, two others on the 29th of October, 1909; that the defendant failed and refused to deliver the oil as agreed in said contract, and that the plaintiff was compelled to have said oil for use in its manufacturing business, and on account of the failure of the defendant to perform said contract it was forced to go, and did go, into the open market and purchase said oil on the 3d of November, 1909, and had to pay therefor 46 cents per gallon, that being the market price for the quality of oil purchased from the defendant; that the loss sustained by the plaintiff was $1,440, and it was further compelled to pay the Atchison, Topeka & Santa Fe Railway Company demurrage on said car to the amount of $30, and switching charges in the sum of $6; and prayed for judgment in the aggregate of said sums.

The answer of the defendant admits the execution of the contract, but avers that the contract provided that said tank cars were to be set on its tracks at Guthrie, so that the same could be loaded from its mill, and that said cars were not furnished and set upon its tracks in October, as provided in said contract, and for that reason it was relieved and discharged from fulfilling the contract.  A reply was filed denying the allegations of the answer which did not admit the facts alleged in the petition, and further alleged that the fact that the cars were not set at the defendant's mill was brought about by the conduct of the defendant and its agents, employees, or managers.

A jury was waived, and the cause was submitted to the court for trial. The court, among other things, found:

"That it was to the interest of the defendant not to have the cars placed, because oil had gone up, and evidently it did not want to deliver at the contract price if any excuse could be found for not doing so. Had oil not advanced in price, I think at least two of the cars, if not all of them, would have been placed and loaded in October."

—And also that these two cars first received by the Atchison, Topeka & Santa Fe Railway Company were not placed at the mill because the defendant requested and prevented the railway company from placing them, and as to the third it found that evidence was not sufficient to show that the conduct of the defendant prevented that car being placed and loaded, and therefore the court adjudged the defendant liable for the difference between the contract price, which was 40 cents per gallon, and the market price, which was 46 cents per gallon, at the time the defendant refused to deliver the oil, and found this amount to be $960, for which judgment was rendered, and for demurrage paid on these two cars amounting to $21, and the interest; the total amount of the judgment being $1,146.70.

The defendant appeals from this judgment on the sole ground that there was no evidence to sustain the findings and judgment of the trial court.

A voluminous brief has been filed on behalf of the plaintiff in error, in which liberal excerpts from the testimony are set out, and the contention is made that there is absolutely no evidence to support the judgment and finding of the court. The brief seems to reasonably support this contention, but after a careful reading of the record we are constrained to hold that counsel is in error in his contention, and that there is sufficient evidence, considering the positive testimony and the justifiable inference to be drawn therefrom, that abundantly support the finding of the trial court.

It appears that the oil mill of the defendant is located on the west side of the tracks of the Atchison, Topeka & Santa Fe Railway Company, and near its freight and passenger depot, at

616 SUPREME COURT OF OKLAHOMA.

W. H. Coyle Consol. Cos. v. Swift & Co.

the city of Guthrie, and that the tracks of the Missouri, Kansas & Texas Railway Company, are east of those of the Atchison, Topeka & Santa Fe Railway Company, and that these tank cars of Swift & Co., in which the oil purchased was to be loaded, came to Guthrie over the Missouri, Kansas & Texas Railway Company. It appears that on October 16, 1909, the Coyle Company notified Swift & Co. that it was ready for the cars, and requested that the same be forwarded; that on October 25th Swift & Co. wired that it had forwarded one of the cars from Greenville, Tex., via Missouri, Kansas & Texas Railway Company, and on the same day the Coyle Company answered by wire requesting that the other cars be routed over the Santa Fe for the reason that it had more or less trouble with the Santa Fe Company in switching cars received from the Missouri, Kansas & Texas Railway Company, and that a reply wire advised that it was impossible to give routing over the Santa Fe, and that the cars would be sent over the Missouri, Kansas & Texas Railway Company. The tank car referred to in Swift & Co.'s message of October 25th arrived at Guthrie over the Missouri, Kansas & Texas on October 28th, and the Coyle Company was notified of its arrival by telephone by the Missouri, Kansas & Texas agent at Guthrie, and the car was received by the Atchison, Topeka & Santa Fe Railway Company on the following day, with instructions to set at the Coyle mill. The other tank cars arrived at Guthrie on the 29th of October, and one of them was delivered to the Santa Fe on the following day, and the other was not delivered to the Santa Fe until November 1st. It appears that Dolcater, who was manager for the Coyle Company's oil mill, and who looked after the loading and unloading of the cars there, was in the office of the Santa Fe Railway Company two or three times each day, during the period covered by this lawsuit, and that the cars would have been set at the defendant's mill within an hour after the request to do so by the Coyle Company at any time after their receipt by the Santa Fe Company. It also appears from the record kept by the Atchison, Topeka & Santa Fe Railway Company at Guthrie that demurrage was charged on the first

tank car that arrived from October 29th, and on the second one from October 31st, and on the third one from November 1st, being from the several days each of said cars were received by the Atchison, Topeka & Santa Fe Railway Company. It appears from the evidence that under the rules of that company demurrage was charged 48 hours after the car is spotted or placed, or is charged immediately when the car is "arbitrarily" placed, and the witness explained that the car was "arbitrarily placed" when the car was not spotted or placed on account of the act or fault of the parties, the consignee. This record, as kept by disinterested parties under the rules of the Santa Fe Company, showed that demurrage was "arbitrarily" charged on each of these cars from the date it was received by the Santa Fe Company, which would tend to prove that the Coyle Company prevented the cars from being placed at its mill. The record clearly shows that the defendant was looking for some excuse for not fulfilling the contract, and justifies the finding of the trial court that if oil had declined, and not advanced, the Coyle Company would have had the cars spotted and loaded, as agreed in the contract.

Numerous little things appear in the record that show the want of good faith on the part of the Coyle Company and clearly establish the fact that it was not attempting to discharge its obligations under the contract, but was seeking some means by which it might escape the loss that would be sustained by filling the contract.

The testimony set out in the record supports the conclusion that the Coyle Company had notice of the arrival of each of the tank cars, at least when the Santa Fe Company received them, and that it could have had the cars spotted at its mill at any time thereafter, upon request, and that the cars were not spotted at the mill because the manager, Dolcater, told the railway agent not to spot them; that the Coyle Company intentionally and studiously breached its contract, hoping by a technicality to escape the loss involved in making good its obligation under the contract.

618. SUPREME COURT OF OKLAHOMA.

It therefore follows, under the rules of law designed to protect the integrity of contracts and without which trade and commerce would be confined to the narrow limits of barter and exchange, that defendant is liable for the damages sustained by Swift & Co. on account of such breach. No complaint is made that the trial court did not correctly determine the amount of the damage.

The exceptions should be overruled, and the judgment appealed from affirmed.

By the Court: It is so ordered.