# GUTHRIE MILL & ELEVATOR. CO. v. HOWE GRAIN & MERCANTILE CO.

No. 6719.   Opinion Filed April 18, 1916.

Rehearing Denied May 9, 1916.

(157 Pac. 290.)

1. **APPEAL AND ERROR—Review—Questions of Fact—Finding by Court.** When a case is tried by the court the findings upon disputed questions of fact will be given the same weight and effect as a verdict of a jury, and where the same are reasonably supported by the evidence, they will not be disturbed on appeal.

2. **CONTRACTS—Construction—Practical Construction by Parties.** Where a contract or any clause thereof is uncertain or indefinite and the parties thereto by their subsequent conduct or acts construe it alike and within the purview of constructions permissible by the language used, the courts will ordinarily follow such construction as the parties themselves make as the correct one.

3. **SALES—Remedies of Purchaser—Breach of Contract—Evidence.** The record in this case supports the judgment of the lower court, and this cause is affirmed.

(Syllabus by Hooker, C.)

*Error from District Court, Logan County;*

*A. H. Huston, Judge.*

Action by the Howe Grain & Mercantile Company against the Guthrie Mill & Elevator Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Tibbetts & Green,* for plaintiff in error.

*Burford & Burford,* for defendant in error.

Opinion by HOOKER, C. This is an appeal from a judgment of the district court of Logan county, Okla., in favor of the Howe Grain & Mercantile Company and against the Guthrie Mill & Elevator Company, for the sum of $779.49 and interest thereon from Ocotber 10,

1912, at the rate of 6 per cent. per annum. The trial was had to the court without a jury. Certain findings of fact and conclusions of law were made by the court, as follows:

"(1)    That on and immediately after the 31st day of August, 1912, the plaintiff and defendant entered into a written contract by letter and telegram, to deliver to the plaintiff 5,000 bushels of Oklahoma No. 3, or better, shelled corn, said corn to be marketable corn, dry enough for grinding, and in no danger of spoiling, shipment to be made during September, 1912, upon the basis of 65 cents, delivered at Howe, Tex.

"(2)    The court finds as a fact that after the entering into of the contract between the parties, the plaintiff ordered the defendant to ship two cars of 1,000 bushels each of said corn to Marshall, Tex., and three cars of 1,000 bushels each of said corn to Houston, Tex.

"(3)    The court further finds that the defendant, by letter and by conduct, acquiesced in and agreed to deliver two cars of said corn at Marshall, Tex., and three cars of said corn at Houston, Tex.

"(4)    That upon said contract the defendant delivered one car of shelled corn to Marshall, Tex., and the same was duly paid for, and is not in dispute in this action.

"(5)    That the defendant delivered one car of ear corn to Marshall, Tex., and one car of ear corn to Houston, Tex., and attempted to apply the said cars on the contract in question; that defendant refused to accept said cars as applying on the contract.

"(6)    That it was a trade custom in the grain trade, known to both parties at the time the contract was entered into and thereafter, that grain bought upon the basis of delivery at Howe, Tex., unless specifically limited to the contrary, might be ordered by the purchaser to be

delivered at any point in the State of Texas, whereupon the purchaser would become liable for the difference in freight to the point where the grain is so ordered and the freight from Guthrie to Howe.

"(7) That the defendant wholly failed and neglected to comply with this contract for the delivery of corn as agreed therein, save and except as to the one car of 1,000 bushels delivered to Marshall, Tex., which was paid for.

"(8) That in pretended compliance with its contract, defendant shipped Southern Pacific car No. 20501, containing shelled corn, to Houston, Tex., and drew a draft upon plaintiff for the contract price of said corn. That defendant paid said draft in the amount of $586.42, with $1 exchange thereon, by reason of the fact that there was attached to said draft a bill of lading, dated September, for Southern Pacific car No. 20501, from Lookeba, Okla.

"(9) That as a matter of fact said car No. 20501 was shipped from Lookeba, Okla., to the Guthrie Mill & Elevator Company, at Guthrie. That said corn when so shipped was ear corn, and was unloaded by the Guthrie Mill & Elevator Company at Guthrie, and by them shelled and reloaded in said car and delivered to the railway company for shipment to Houston, on October 8, 1912, and that said car was present at Guthrie and was inspected by the grain inspector, with the knowledge of defendant, on October 10, 1912. That plaintiff paid defendant's draft on said car before the arrival of said car, and without having an opportunity to inspect the same.

"(10) That upon the arrival of said car at Houston, the corn therein was hot, moldy, rotten, and in bad condition. That plaintiff thereupon wired to defendant to repay plaintiff's money and handle the car themselves. That defendant neglected so to do, and that plaintiff thereupon sold said car to the best advantage, and received from said corn the sum of $316.03, which is by the court

found to be a fair, reasonable, and market price of said corn at said time and place.

"(11) The court finds as a fact that said corn was disposed of by the plaintiff within a reasonable time after it arrived.

"(12) ·That the reasonable market price of the same kind of corn which defendant engaged to deliver at Marshall, Tex., at the time it became apparent that defendant would not perform its contract, and for a reasonable time thereafter, was 73½ cents per bushel.

"(13) That the reasonable market value of the like grade of corn to that agreed to be delivered by the defendant at Howe, Tex., at the time it became apparent that defendant would not comply with its contract, and for a reasonable time thereafter, was from 73 to 75 cents.

"(14) That the reasonable market price at Houston, Tex., of a like grade of corn to that agreed to be delivered by defendant at the time it became apparent that defendant could not comply with its contract to deliver to that point, and for a reasonable time thereafter, was the sum of 77 cents.

"(15) That the ·freight rate from Guthrie to Houston, Tex., is 2¼ cents per bushel higher than from Guthrie to Howe, Tex.

"(16) That plaintiff paid the sum of $130.60 freight on Southern Pacific car No. 20501.

"(17) That the freight rate from Ft. Worth, Tex., to Houston, to Marshall, and to Howe, Tex., is 7 cents per bushel.

"(18) That the plaintiff, within a reasonable time after defendant failed to comply with its contract, could not have bought corn of the quality agreed to be delivered by the defendant, in the open market at Ft. Worth, and ship the same to Howe, to Marshall, or to Houston, and deliver the same at either of said points, at· a cheaper

price per bushel than the price heretofore set out as the average price of corn at said time and at said points.

"(19)   That it is a custom of the grain trade, known to both plaintiff and defendant at the time said contract was entered into:   (1) That time should be considered of the essence of every contract, unless specifically otherwise agreed; and (2) that ear corn would not apply upon a contract for shelled corn."

"Conclusions of Law.

"The court makes the following conclusions of law:

"(1)   Plaintiff and defendant entered into a valid and subsisting contract in writing.

"(2)   Defendant failed to comply with his contract except as to the delivery of one car of corn to Marshall, Tex.

"(3)   The directions of plaintiff to deliver corn to Marshall and to Houston, Tex., were so acquiesced in by the defendant as to become a binding part of the contract.

"(4)   The defendant was responsible for the delivery of the contents of Southern Pacific car No. 20501, in the condition named in the contract, and that, having received the money therefor, without an inspection by the plaintiff upon the arrival of said car at Houston in bad condition, the plaintiff was justified in refusing to accept said car on said contract, and the defendant was liable to the plaintiff for the damage resulting from the condition of the corn contained in said car.

"(5)   That plaintiff used due diligence in the premises to dispose of said car after neglect by the defendant to handle the same for itself.

"(6)   That under the laws of the State of Texas and the general custom of parties engaged in the grain business, time was of the essence of the contract entered into between plaintiff and defendant.

"(7)    That as a matter of law and general custom of the trade, defendant could not apply ear corn upon a contract for the delivery of shelled corn.

"(8)    That the plaintiff is entitled to recover of the defendant the sum of $292.50 for failure to deliver 3,000 bushels of corn to Houston, Tex.; the sum of $85.00 for failure to deliver 1,000 bushels of corn to Marshall, Tex.; the sum of $587.42, draft paid on Southern Pacific car No. 20501, plus $130.60 freight paid on same, less $316.03 received from sale of damaged corn, a total of $779.49, with interest thereon at the rate of 6 per cent. per annum from October 10, 1912, until paid, and for the costs of this action. Let judgment be entered accordingly. Exception allowed defendant.

"A. H. HUSTON, *Judge.*"

Plaintiff in error asserts that this judgment should be reversed for the following reasons:

"First.    The ear corn delivered by it to defendant in error substantially complied with the contract.

"Second.    It was error to charge it with the damaged corn diverted to Houston by defendant in error.

"Third.    The measure of damages was incorrect."

It must be borne in mind that this case was tried by the court, and, under the well-established rule of this court, the findings of the court below upon disputed questions of fact will be given the same weight and effect as the verdict of a jury, and, when the same are reasonably supported by the evidence, will not be disturbed upon appeal in the Supreme Court.    See *Schaffer v. Lee, Dec.,* 166 Pac. 94, not yet officially reported, and cases therein cited.

The trial court held that plaintiff in error did not comply with its contract when it delivered "ear corn"

instead of shelled corn to defendant in error. It is admitted that by the contract shelled corn was contemplated, and we are unable to see how it can be asserted by the plaintiff in error that it complied with its contract by delivering ear corn. In fact the plaintiff in error by its conduct in handling the ear corn on its own account recognized that it was not complying with its contract by shipping same.

It is claimed here that plaintiff in error should not be held liable for the damaged condition of the corn shipped by it for defendant in error to Houston, for that, under the contract, it was only required to deliver the same in good condition in places within group 1 in the State of Texas, and that, inasmuch as it required a much longer time to deliver to Houston than to places in group 1, it could not be said from the evidence that it had breached its contract in the delivery of said corn. There was evidence, which was evidently believed by the trial court, that if the corn had been in proper condition when it was shipped from Guthrie about October 1, it would have remained so until it was examined at Houston about October 21st. And this evidence establishes that corn in the condition called for in the contract should have withstood the few days' delay due to being shipped to Houston. It cannot be said that defendant in error did not have the right to have the corn shipped to Houston, for the evidence here shows the rules and regulations of the Grain Association in Texas and Oklahoma are a part of all contracts of this character, and the conduct of the parties to the contract all recognizes and establishes the right of any buyer to divert shipments subject to adjustment of any increased freight charges. This court in the

case of *Wiebener et al. v. Peoples,* 44 Okla. 32, 142 Pac. 1036, in the syllabus, says:

"Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the purview of the constructions permitted as possible by such language, the courts will ordinarily follow such adopted construction as the correct one."

Viewing this case from the authority of the Wiebener Case, *supra,* we must hold that the letters, telegrams, rules of the Grain Association, and the subsequent conduct and acts of the parties construe this contract so that a diversion of the corn from group 1 to 3 was permissible. This being true, the plaintiff in error was obligated by its contract, and should have delivered the corn in the condition contemplated by the contract, and if it failed, it is responsible in damages. It therefore follows that if the plaintiff in error failed to deliver to defendant in error at Houston, Tex., shelled corn in the condition expressed in the contract, defendant in error was justified in refusing to accept the same, and after due notice to plaintiff in error of the damaged condition of the corn and its refusal to handle the same on its own account was authorized to handle the car of damaged corn to the best advantage on the account of the plaintiff in error.

The failure of plaintiff in error to deliver corn in accordance with its contract with defendant in error constituted a breach of its contract for which damages could be recovered, and this court, in the case of *Coyle v. Swift,* 42 Okla. 613, 141 Pac. 1114, says:

"(1) A party to a contract of sale, who knowingly and studiously fails and refuses to deliver the commodity

agreed to be sold, as stipulated in the contract, is liable to the other party in damages in an amount sufficient to cover the loss, if any, resulting from such failure to deliver.

"(2)    The damages resulting from the breach of a contract of sale of a commercial commodity may be properly estimated by taking the difference between the contract price and the price that must be paid for the purchase of a like quantity and quality of the same commodity in the open market at the time of delivery specified in the contract."

Also in case of *Bank v. Howell*, 41 Okla. 216, 137 Pac. 657, this court says:

"As a general rule, in ordinary cases, the true measure of damages, where the seller fails to deliver goods sold, where the purchase price has not been paid, is the difference between the agreed price and the market price at the time and place of delivery, with interest, and this is on the theory that the purchaser can go on the market and purchase the goods from another by paying the difference in price."

The damages accruing to defendant in error, when measured by the standard announced in the cases cited above, justify the judgment of the trial court.

Affirmed.

By the Court:   It is so ordered.