## AMERICAN WINDOW GLASS COMPANY *v.* WILLIAMS.

[No. 4,342.   Filed April 3, 1903.]

LANDLORD AND TENANT.— *Gas Lease.— Construction. — Termination.— Estoppel.—*A lease of land for gas purposes was for a period of ten years and as much longer as gas was found in paying quantities, or the rental paid as provided. If gas sufficient for manufacturing purposes was found, the lessor was to receive the sum of $100 per annum for each well so used. Until the lessee drilled a well and began the use of gas for manufacturing purposes, the lessor was to receive an annual rental of $50. Lessor was to receive, and did receive, during the ten years' period, gas for do-

mestic purposes from lessee's nearest pipe-line. A few days before the expiration of the ten years' period provided in the lease, the lessee sunk a well and found gas in paying quantities, but closed the well and used none of the gas for manufacturing or other purposes, and paid no rental during said period except the annual payment of $50. *Held*, that the lease was not continued in force beyond the ten years by the drilling of the well, and that the lessor was not estopped from declaring the lease terminated by his use of gas from the well after the expiration of the ten years' period, nor by the use of gas from lessee's pipe-line prior thereto.

From Wells Circuit Court; *E. C. Vaughn*, Judge.

Suit by Alonzo M. Williams against the American Window Glass Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. S. Dailey*, *Abram Simmons* and *F. C. Dailey*, for appellant.

*J. A. Hindman* and *M. M. Powell*, for appellee.

BLACK, P. J.—The appellee sued the appellant to quiet his title to certain real estate in Blackford county. The appellant's demurrer to the complaint for want of sufficient facts was overruled; and the appellee's demurrers to each of three paragraphs of answer were sustained.

The complaint showed that the appellee being the owner in fee simple of the land in question, he and his wife, whom we will call the lessors, entered into a contract in writing February 8, 1890, with the appellant's assignor, a corporation, which we may designate as the lessee. By the terms of this contract (so far as they need be stated) the lessors granted, demised, and let to the lessee, its successors, and assigns "for the purpose and with the exclusive right of drilling, operating for petroleum oil and gas," the tract of land in question. The lessors granted the lessee the right to remove any and all buildings, machinery, or fixtures placed on the premises by the lessee, either before or after the termination of the contract, and the lessors reserved the right to use and enjoy the land for tillage, except such part as might be necessary for the purposes specified, no

well to occupy more than one acre of land; the lessee, its successors or assigns, "to have and to hold said premises for said purposes only for and during the term of ten years from the date hereof, and as much longer as gas or oil is found in paying quantities, or the rental paid as herein provided for." The lessee agreed to give the lessors one-eighth of all oil produced and saved from the premises. It was stipulated, that "if gas is found on said premises in paying quantities, sufficient for manufacturing purposes, and be used by the second party or its assigns for manufacturing purposes, the consideration in full to the parties of the first part shall be $100 per annum for each and every gas-well drilled on the above described land, from the time said second party begins to use gas therefrom for manufacturing purposes. It is further agreed that the parties of the first part may use gas free of charge for domestic use in and about two dwelling-houses on said premises, from the nearest gas-well or pipe-line to said houses, which may be owned by the said second party at the time said parties of the first part may elect to use such gas, but the procuring and laying of service-pipes, and the operating and using of the same for said purpose shall be at the expense and risk of the parties of the first part. Until such time as the party of the second part shall drill a gas or oil-well on said premises and begin to use gas therefrom for manufacturing purposes, or to save oil therefrom, said party of the second part is to pay an annual rental for said premises, during the term herein specified, of $50, the rent to be due semiannually upon the 1st day of January and July, and shall be paid within ten days from maturity thereof at the office of the company." It was provided that should the lessee, at its option, abandon a well on the premises furnishing sufficient gas for the residence, the well should be left in such condition to be used by the lessors at their expense, if they should desire such well to be left in such condition. The lease was recorded, and

afterward, October 7, 1899, the lessee assigned it to the appellant by a written assignment, which was recorded.

The complaint alleged that the appellant, February 4, 1900, drilled and sunk a well on the premises, which resulted in finding gas therein in paying quantity; and immediately upon the completion of the well, the appellant closed and anchored it, so as to prevent the escape of gas therefrom, "and did not, nor has it ever, nor has anyone under said lease produced any gas or oil from said premises, nor has the defendant or any other person or corporation transported or used any gas from said premises for manufacturing purposes or for any other purpose, nor has the defendant or any other person or corporation under said lease produced or saved any oil from or upon said premises." It was further averred, that at the time of the execution of the lease the lessee had a gas line near said premises, and soon thereafter the appellee, at his own cost, laid a service-pipe from that gas line to the two houses mentioned, and thereafter he used gas therefrom in the houses for domestic purposes, and he continued so to do until February 7, 1900, at which time he disconnected his service-pipe from this gas line, and thereafter he did not use any gas from any pipe-line or from any source belonging to the lessee or the appellant, and since that date he has not used any gas by reason of or pursuant to or under the terms of the lease; that from the time of the execution of the lease, on the 1st of January and July of each year, the lessee and the appellant paid the appellee $25, under and pursuant to the terms of the lease, the last of such payments being made July 1, 1899, which was for the six months then ensuing. It was alleged that the land in question is within the gas-producing territory, from which gas could have been produced in large quantities during all the time after the execution of the lease, which was known to the lessee and the appellant during that time, and the lessee and the appellant during that period had been producing

and using for manufacturing purposes gas produced from wells on territory in the vicinity of the appellee's premises, and during that period numerous other companies had been producing and transporting large quantities of gas from the territory in that vicinity, and had been reducing and depleting the gas supply from the common reservoirs containing it, including the appellee's premises. It was alleged that no other well had been constructed on appellee's premises except that completed February 4, 1900, since which time neither oil nor gas had been found or produced in, upon, or from said premises, "nor has any rental whatever been paid to plaintiff for said premises by said defendant or any other corporation or individual under or by virtue of the terms and conditions of said lease, save and except such payments as were made aforesaid." It was alleged that on February 17, 1900, the appellee declared the lease to be void, and, believing it to be at an end and no longer binding upon him, he then took possession of the well so constructed on the premises, and laid a service-pipe therefrom to his dwelling-house on the premises, whereby he connected the well with the dwelling-house, and he had ever since been using gas from the well for domestic purposes in and about the dwelling-house; that April 7, 1900, the appellant tendered and offered to the appellee $100 in gold, lawful money of the United States, for the gas from said well, and offered to connect the well with a pipe-line of the appellant, and to begin then to use gas from the well under the terms of the lease; all of which the appellee refused, and he then forbade the appellant, its agents, and servants, to enter upon the premises, and forbade it to connect the well with its pipe-lines, on the grounds and for the reason that said lease had expired and was at an end, and that the appellant no longer had any right or authority under said lease to take or produce gas or oil from said premises. It was further alleged that

when the appellant closed and anchored the well upon the completion thereof, it was not the intent of the appellant permanently to abandon the well or the premises, but the well was so closed and anchored by the appellant with intent to retain it for future use of the appellant; that by reason of the failure of the lessee and the appellant to produce gas or oil on the premises during the period of ten years or at any time thereafter, and by reason of the failure of the appellant to find gas or oil on the premises after the expiration of the ten years, and to pay the rental provided for in the lease, it had expired, and was null and void and of no force or effect; yet the appellant was claiming that the lease was in full force and effect, and that its terms and conditions were binding upon the appellee; and the appellant claimed the right to hold the premises, and to refuse to produce gas or oil therefrom, and to prevent the appellee and all other persons from producing gas or oil therefrom, and refused to cancel the lease of record, or in any manner to surrender or release it or any portion of it; and that the lease is a cloud upon the appellee's title, etc. Wherefore, etc.

The first paragraph of answer was in most respects a recital of the essential facts of the complaint. It was also alleged that the appellant, in January, 1900, took actual possession of the real estate, with the knowledge of the appellee, and on January 30, 1900, completed the gas-well, which would produce about 2,000,000 cubic feet of gas per day, and which was completed by the appellant at a cost of about $1,000; that April 7, 1900, the appellant tendered and offered the appellee the $100, as mentioned in the complaint, for the term of one year from January 30, 1900; but the appellant never used any gas from the well before the date of this tender, but retained the gas for future use of the appellant for manufacturing purposes; and that at the time of the tender the appellant offered and proposed to

connect the well with its pipe-lines, and to use the gas there-
from 'for manufacturing purposes, but the appellee ob-
jected and would not permit the making of the connection;
and if the appellant had not been so prevented it would
have made the connection, and would have so used the gas
at that time. In the second paragraph of answer the appel-
lant pleaded the use of gas from its lines by the appellee
during the ten years as an estoppel; and in the third para-
graph it pleaded, also as an estoppel, the construction of
the productive and expensive well in January, 1900, and
the connection of the well with the appellee's dwelling-
house, and his use of the gas therefrom after the end of the
ten years.

No oil was found on the premises, and the case involves
the construction of the provisions of the contract relating
to gas. Two kinds of compensation to the landowner, called
rent and rental, were provided for with reference to gas.
There was a definite term of ten years, during which the
lessee was not obliged to drill any gas-well, but, in case of
failure to use gas for manufacturing purposes, the land-
owner was to be compensated to the extent of one-half the
annual value to him of one well in use by two semiannual
payments of $25 each. The lessee was to make these semi-
annual payments "during the term herein specified," until
the lessee should drill a well and begin to use gas there-
from for manufacturing purposes. Then, if gas were found
in paying quantities sufficient for manufacturing purposes,
and if it should be used by the lessee for such purposes, the
full consideration to the lessor was to be $100 per annum
for each gas-well, from the time the lessee began to use gas
therefrom for manufacturing purposes. So the rent of
$100 per annum was not to commence until a well was
drilled which produced gas in paying quantities sufficient
for manufacturing purposes, and the lessee began to use
the gas therefrom for such purposes; and the rental of $50
per annum was to be paid until such well was drilled and

such use of gas therefrom began, during the term specified in the lease.

The term mentioned as such specifically in the *habendum* was a term of ten years from the date of the contract. It was further provided that the lessee should have and hold as much longer than ten years as gas should be found in paying quantities, or the rental should be paid as provided for in the lease. It was not contemplated that the lease should continue without rent. The rent of $50 per annum would not continue, in any event, longer than ten years; and the rent at $100 per annum would not commence until the lessee should begin to use gas for manufacturing purposes. Within the period of the definite term of ten years the lessee might drill a well, and cap and anchor it, and preserve the gas, and save itself from the obligation to pay the rental of $100 per annum, being obligated only for the rental of $50 per annum.

The contract should be construed upon the theory that the parties intended its provisions to be consistent with each other, and they should be made to harmonize, if possible, by keeping in view the controlling intent. If at the end of the definite term no well had been drilled, there would be no provision for rent thereafter. The rent of $100 per annum could not commence with the mere drilling of a well capable of producing gas in paying quantities for manufacturing purposes, and the appellee was not bound to be content with a rental of $50 per annum longer than the ten years. If, at the end of ten years, such a condition had not arisen pursuant to the terms of the contract as to entitle him under the contract to the larger rental, he was not bound by the contract for a longer period than the ten years. He might rightfully then regard the principle and essential consideration of the contract as having ceased to be longer existent, and might relinquish the incidental benefit of free gas for his dwelling-house, and declare the contract ended. The hardship suffered through the large expenditure for

the well was imposed by the appellant upon itself. The appellee could not forbid the drilling of the well within the term of ten years, when it was drilled. If the appellant had at once commenced to use the gas from the well for manufacturing purposes, and thereby, before the ending of the period during which it could retain its rights under the lease by paying an annual rental of $50, had created a relation under which the larger rental would be payable, it would have obtained the benefit of its expenditure for the well. This was a matter within the control of the appellant, wherein it was not and could not be influenced by the conduct of the appellee. The land with the well upon it being the property of the appellee, he had the right to use the gas from the well without incurring obligation under the contract to the appellant.

Whether or not the appellant may recover compensation for the materials left by it in or about the well, or may remove such materials, are not questions in this case.

Judgment affirmed.